[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case comes to this court as a limited contested dissolution of marriage. The parties married on June 11, 1955 in New York City. The wife's maiden name was Beatrice Hennessy. The parties have lived for at least one year prior to the date of the complaint in Connecticut. In fact, they have lived here for over thirty years. The parties have six children all of whom have reached their majority. The court finds that the marriage of the parties has broken down irretrievably. Neither of the parties has been the recipient of state aid.
The parties have been married for over 37 years. The husband was an executive with the Nestle Corporation. He retired from that company after twenty-three years of service and is presently not employed. He is sixty. He is living, as shown on his financial affidavit, off his IRA. The parties are living in the house together. The husband retired in 1988 and as part of his package he received one years salary, he kept his auto, he was able to keep health benefits, and he received a pension of about $380,000 and 401 K plan of about $120,000. The retirement account, when he took it out from his company, grew to about $600,000 based on his investments but has now been reduced because of its use for living expenses.
The wife who is age sixty-two is a part time employee of the city of Stamford. She earns gross $327.00 approximately per week and her net $220.00 per week.
The husband has some health conditions which include the fact CT Page 79 that he had a heart attack at his office at age 54. He takes medication and it is under control at this point. He has medication for high blood pressure. He is also a diabetic. He had some eye surgery for a detached retina and apparently has need of cataract surgery which is scheduled for January 12, 1992. He indicates that he needs a month of recuperation after that surgery.
The wife described the major problem in the marriage as one of the husband's battles with alcohol. It is undisputed that during the course of the marriage that he entered inpatient treatment for his alcoholism. The wife described his alcohol abuse as commencing in 1964, she described him as becoming abusive to her and he started to drink on a daily basis. She described his drinking habits at some points as being a quart everyday with gin in the summer and Jack Daniels in the winter, including shots and beers. She described the fact that his alcoholism caused him to become obnoxious in behavior, short tempered, verbally abusive, highly critical and he used foul language.
The wife testified to an "alcohol intervention" at his doctor's office five years ago. Five of the children were present and the doctor, the wife was not there. He has been a member of AA. In October of 1989 he entered the Institute of Living for twenty-eight days and has begun drinking since then.
It is clear to this court after listening to the parties that the alcohol abuse by the husband has been a contributing cause of the break down of the marriage. It is clear to this court that the marriage has broken down irretrievably. The parties can no longer communicate. The husband is of the opinion the marriage has not broken down irretrievably but the evidence is otherwise. It is clear to this court that despite all of his family's recognition of his drinking problems he has continued to drink. He is under the impression that his alcohol use is not part of the problem. The court finds that the marriage is to be dissolved on the grounds of irretrievable breakdown.
The major assets of the parties are the real estate at 65 Simsbury Road, Stamford, Connecticut and the IRA of the husband. The house is shown on the wife's financial affidavit with a value of $325,000 and the husband's affidavit of $300,000. The IRA shown on the husband's affidavit of December 10th showed the IRA at Paine Webber with a value of $414,000. It is also clear that in addition the parties have some other assets in the way of furniture bank accounts and loans receivable from some of their children. CT Page 80
This court has taken into consideration the exhibits introduced into evidence. The court has listened to all of the witnesses in the case including the son Joseph. In addition the court has taken into consideration all the criteria set forth in46b-81 the assignment of property and transfer of title statute,46b-82 the alimony statute and 46b-62 the attorney's fee statute. The court has also listened to the arguments of counsel and their written proposals and claims for relief along with the financial affidavits of the parties. The court makes the following orders:
1. The marriage is dissolved on the grounds of irretrievable breakdown.
2. Neither of parties is awarded periodic alimony since both of the parties have indicated they are not desirous of alimony one from the other.
3. The court orders the marital residence sold. The wife is to have exclusive possession of the premises as of February 12, 1993. This is one month after the husband's eye surgery. It is intended to give him a period of one month recuperation. The husband shall not be the selling broker in this sale and shall only be entitled to a commission for the listing. He is in no way to involve himself in the process of the sale as a broker. It is ordered as follows:
a. The husband may be the listing broker.
b. The property should be listed no later than March 12, 1993 for sale.
c. The parties shall share equally any commission the husband receives as a result of the sale.
d. The parties shall attempt to agree on the listing price.
e. If they cannot agree the parties shall each choose one local realtor or appraiser and those parties chosen shall chose a third local realtor or appraiser. The three chosen shall determine the listing price of the property.
f. The sale price shall be reviewed in ninety days but no automatic reductions are to apply. CT Page 81
g. This court specifically rejects any show condition or fix-up expenses to the house. The house is to be listed as is unless the parties mutually agree otherwise.
h. The court will retain jurisdiction over the sale.
i. The net proceeds shall be divided 60% to the wife and 40% to the husband.
j. The net proceeds shall be determined as the proceeds left after the first mortgage, the brokerage commission, closing costs, recording fees, conveyance tax, attorney's fees for the sale and the like are deducted from the gross sale. The balance of the proceeds remaining after the payment of aforesaid debts and expenses shall be divided 60% to the wife and 40% to the husband. Each party shall be equally responsible for the capital gains tax due on the sale of the residence if any regardless of the fact that the wife has received more of the net equity.
k. Neither of the parties shall have any option to purchase the premises.
4. The parties are to attempt to divide the household furnishings, appliances and video equipment located at the marital residence at 65 Simsbury Road between them as equally as possible. In the event they are unable to agree on a complete division of such property the dispute shall be referred to the family relations division of the superior court for mediation. In the event that mediation fails the property not agreed on shall be ordered sold and the net proceeds shall be divided equally between the parties.
5. The husband has been responsible for filing the parties joint tax return through the years. Any assessments or penalties due as the result of his actions or income shall be his sole responsibility. He shall hold the wife harmless and indemnify her. The wife shall only be responsible for participation and indemnification in the tax returns if she has understated her income and that is found to be the basis of any tax adjustment.
6. Both parties have health insurance through their current or former employers. Both parties may maintain the right to elect COBRA insurance coverage at his/her own expense if desired from the other's carrier. From the date of the dissolution neither party is responsible for the hospital, medical, dental or related expense of the other. CT Page 82
7. The parties shall each be responsible for the debts listed on their financial affidavit.
8. The American Express Privileged assets, as shown on the husbands financial affidavit, in the approximate sum of $11,892 is to be divided equally between the parties.
9. The American Express joint money market checking account in the approximate sum of $191, as shown on the husband's financial affidavit, is to be divided equally between the parties.
10. The Nestle Credit Union in the approximate sum of $128 is to be divided equally between the parties.
11. The CBT individual checking account in the approximate sum of $6,437, as shown on the husband's financial affidavit, is to be divided equally between the parties.
12. The IRA rollover account at Paine Webber shown on the husband's financial affidavit in the approximate sum of $414,566 as of December 1, 1992 is to be divided equally between the parties as of the date of this decree.
13. The loan receivable from the daughter Monica, as shown on the husband's financial affidavit, is to be divided equally between the two parties in the approximate total sum of $7,000.
14. The loan receivable from the son Michael, as shown on the husband's financial affidavit, in the approximate total sum of $12,000, is to be divided equally between the parties.
15. The loan receivable from the daughter Teresa, as shown on the husband's affidavit in the approximate total sum of $2,000, is to be divided equally between the parties.
16. The wife is to be awarded the Buick Electra 1982 that she drives. The husband is awarded the 1985 Buick La Sabre.
17. The wife is to keep the Credit Union items shown on her financial affidavit under other personal property being items two, three and five as her sole and exclusive property in order to balance out the disparity between the values of the automobiles, between the wife's 1982 Buick Electra and the husband's 1985 Buick La Sabre and other equitable factors. The accounts are the Credit CT Page 83 Union IRA account in approximate sum of $2,100, the Credit Union savings account approximately $50 and the City Credit Union checking account of approximately $200.
18. The court finds that the wife's request for counsel fees, as set forth on the affidavit submitted, are fair and reasonable under all the circumstances especially in light of the indication of the attorney's fees payments made by the husband. The court orders the husband to make a contribution towards the wife's attorney's fees in the sum of $3,500 when the net proceeds of the house are received by him.
19. The $13,434 of medical expenses that have been paid to health care providers are expected to be partially reimbursed by insurance. These reimbursements are to be shared equally between the parties.
20. In the event the parties file joint tax returns for 1992 they shall share equally the amount of the refund or pay the amount due equally. In the event they do not file joint tax returns for 1992, the amount prepaid by the husband to IRS shall be shared equally between the parties. Approximately, $35,000 was paid to the IRS and approximately $7,200 to the state of Connecticut.
21. The $1,750 cash held by the Husband is to be divided equally between the parties.
22. All claims for relief requested by the parties but not addressed herein have been rejected by the court.
Karazin, J. CT Page 84